BARNARD, P. J., concurred; DYKMAN, J., not sitting.

Order dissolving corporation affirmed, with costs; motion to dismiss appeal denied, without costs.

---

BARCLAY HAVILAND, PLAINTIFF, *v.* MARTHA T. WILLETS AND ANOTHER, AS ADMINISTRATORS, ETC., AND OTHERS, DEFENDANTS.

*Agreement between an executor and a legatee — fiduciary relation — mistake as to legal rights induced by fraud.*

An executor of a will sustains a relation of trust and confidence to a legatee and heir-at-law of the testator, and an agreement between them, whereby such trustee and his friends become substantially the donees of the property coming to such legatee and heir, falls within a class of agreements which courts always regard with just suspicion.

An heir and legatee, who was an aged farmer, unused to the ways of business, was induced by the executor of a will, who was a shrewd and experienced man, to give an apparent assent to a division of the testator's estate, including his share therein, upon a basis totally at variance with his legal rights, and was subsequently taken to the office of a lawyer selected by the executor, where the only remark made by such lawyer, in the presence of the legatee, which would tend to suggest his legal rights, was not addressed to him, but to the executor, and was in technical language.

*Held*, that an instrument under seal, executed by the legatee, which was in form an assignment and release, and, in effect, a transfer, as an act of simple bounty, of the legatee's share in the testator's residuary estate to the executor and his relatives, was properly set aside as having been executed by the legatee under a mistaken notion of his rights.

In such a case evidence of mutual mistake is not necessary; mistake on the one hand and fraud on the other being sufficient to set aside an instrument so made.

MOTION by the defendants, Martha T. Willets and others, for a new trial in an action in equity to set aside a sealed instrument, and

for an accounting, in which a decree in favor of the plaintiff had been rendered at the Dutchess Special Term on the 21st day of September, 1891.

The instrument in suit was signed, sealed and executed March 18, 1886, by the plaintiff, Barclay Haviland, and one Stephen Taber, individually, and as executor of the will of Isaac E. Haviland, deceased, and, after certain recitals, stated that, in consideration of the premises, and of the sum of one dollar paid by Stephen Taber, individually, and as executor of the last will and testament of Isaac E. Haviland, deceased, Barclay Haviland released, assigned and transferred to Stephen Taber, as such executor, all right and interest of said Barclay Haviland in and to all the personal property and estate of said Isaac E. Haviland, deceased, " to have and to hold the same until the said Stephen Taber, as such executor, and his successors for the purpose of distribution between himself and Martha T. Willets and S. Phebe Taber Willets in manner and form " as therein provided. The instrument further declared that Barclay Haviland thereby released Stephen Taber, both individually and as executor, from all demands growing out of the estate of said Isaac E. Haviland, except as to the balance due him of one-tenth of the estate of $190,000, therein stated, which balance Stephen Taber, individually, and as executor, thereby agreed to pay over to Barclay Haviland.

It was found by the trial judge that on or about the 29th day of November, 1885, one Isaac E. Haviland died, leaving a last will and testament bearing date March 15, 1855, and which was proved and admitted to probate by the surrogate of the county of Queens on the 8th day of December, 1885, and letters testamentary thereon issued to Stephen Taber as sole surviving executor thereof named in said will. Isaac E. Haviland left him surviving no descendants and no widow, father or mother or sister, and left him surviving the plaintiff herein, his only brother, as sole heir-at-law and next of kin, and left an estate of the value of from between $160,000 to $190,000. In and by said will of Isaac E. Haviland, the testator, after bequeathing to various persons small legacies in money, amounting in all to about $3,300, and certain gold watches, books, tea-sets, etc., of inconsiderable value, bequeathed the sum of $2,000 to the plaintiff in this action, and directed that all the rest and residue of his property should be divided into two equal parts, one of which should

go to Stephen Taber, a nephew of the deceased wife of the te tator, and one of which should go to Samuel T. Taber, also a nephew of the deceased wife of the testator. Samuel T. Taber named as one of the residuary legatees and devisees, died prior to the said Isaac E. Haviland, leaving him surviving two children, the defendants, Martha T. Willets and S. Phebe Taber Willets, as his sole heirs-at-law. Samuel T. Taber having died prior to the death of the testator, the legacy devised to him set forth in said will, being the one-half of the residue of the said estate after the payment of the debts and specific legacies before mentioned, lapsed and became null and inoperative, and the said one-half of said residuary estate upon the death of said Isaac E. Haviland became and was the property of the plaintiff in this action, as his only heir-at-law and next of kin. Shortly after making and executing the last will and testament aforesaid the said Isaac E. Haviland became insane, and in or about the year 1860 a committee was appointed of his person and estate. At that time his entire estate was of the value of about $40,000. He remained insane until the time of his death, in the year 1885, and during the period of his insanity his estate increased and accumulated until at his death it amounted to the sum before named. Stephen Taber proceeded to administer upon the estate of Isaac E. Haviland and continued so to administer the same until his death, which occurred on or about the 23d day of April, 1886 ; he died leaving the estate of Isaac E. Haviland in part unadministered, and the defendants, Martha T. Willets and Thomas T. Taber, have been appointe administrators, with the will annexed, of said Isaac E. Haviland an are still acting as such. At the time that plaintiff executed the instrument in suit he did not know that the provision made by the will of Isaac E. Haviland to Samuel T. Taber had lapsed or was inoperative, and he did not know that the one-half of the residuary estate bequeathed and devised by said will to Samuel T. Taber, by reason of said lapsing, belonged to or was the property of the plaintiff, and had no knowledge that he had any rights in the estate of Isaac E. Haviland, deceased, other than as a legatee named in his will, and did not become informed as to his rights under the will until after the execution of said instrument. Stephen Taber, one of the residuary devisees and legatees under the will of said Isaac E. Havi-

land, and one of the executors thereof, was fully informed concerning the rights of the plaintiff in the estate of Isaac E. Haviland prior to the execution of said instrument, and he did not disclose such knowledge and the rights of said plaintiff to him, the plaintiff. At the time of the execution of said instrument and in the negotiations leading thereto the plaintiff was not accompanied nor was he advised by any attorney; at the time of the execution of said instrument the plaintiff was seventy-three years old; the said instrument was read to the plaintiff prior to his signing the same, but he did not understand its contents, and he did not understand that he had any right to the share left by said will to Samuel T. Taber, and during all of the negotiations leading to and down to the time of the execution of the instrument the plaintiff was ignorant of the fact that the legacy to Samuel T. Taber had lapsed and that he, the plaintiff, had any right or interest in the same; the plaintiff has never received from the estate of Isaac E. Haviland any further or other sum than $18,000, and as to such sum as was paid to the plaintiff over and above the specific sum bequeathed to him by said will, there is no evidence whether the same was paid out of the general estate or out of the share coming to the children of Samuel T. Taber, deceased; the plaintiff executed such instrument without knowledge of his rights, and that he executed it under a mistake of fact and would not have executed such paper had he known of his rights in and to the estate of said Isaac E. Haviland.

It further appeared in the case that before executing the instrument in suit the plaintiff went with Stephen Taber to the office of a lawyer, who testified that he then stated in their presence that "the legacy and share of Samuel T. Taber had lapsed."

And the court stated, among its conclusions of law, that the agreement referred to should be set aside and declared null and inoperative, as having been procured from the plaintiff through his mistake of fact and ignorance of his rights, and that said paper should be adjudged to be no bar to the prosecution of this action and to the recovery by the plaintiff of the amount of the lapsed legacy or devise, less such sum as has already been paid to him.

*Arnoux & MacArthur*, for the appellants.

*Frank B. Loren*, for the respondent.

PRATT, J.:

We concur in the conclusions of the learned trial judge in this case. The agreement in question was made between Taber, who was the surviving executor of a will, and plaintiff, who was a legatee and sole heir-at-law of the testator. It is, therefore, apparent that the executor sustained a relation of trust and confidence to the plaintiff, and that, if the writing shall stand, the trustee and his friends thereby became substantially the donees of that which must have been regarded as quite a fortune by each of them — a fortune which belonged to plaintiff and which it was this trustee's duty to preserve for and deliver over to him in due course of administration. The case, therefore, falls within a class which courts always regard with just suspicion. This one presents features which offend the moral sense. An aged man, living on and working a farm, unused to the ways of business, suddenly became entitled to a fortune through events dependent somewhat upon questions of law which, although familiar to lawyers and, perhaps, to shrewd business men, were, nevertheless, quite abstruse, not to say intricate, to an old farmer like the plaintiff. It is conceded that the executor was a remarkably shrewd, experienced, and, as we judge by the result, very thrifty person.

Plaintiff was somehow induced to give an apparent assent to a division of the testator's estate, including his share therein, upon a basis totally at variance with his legal rights. He was subsequently taken to the office of a lawyer not of his own choice, but selected by the trustee. He was utterly without professional advice or assistance of his own selection. The only remark made in his presence which would even tend to suggest his legal rights, although intended as it is said for his benefit, was not even addressed to him, but to the trustee. It was couched in technical language which could have had but little meaning to this old farmer, then about seventy-four years of age. It is by no means clear that he even heard the remark or felt at liberty to inquire about its meaning since it was not addressed to him. The result was a long, carefully drawn and somewhat involved paper, covering five pages of the printed case, three and a half of which are occupied with recitals which become conspicuous chiefly because they fail to disclose the point upon which this old man's rights depended, and which was the subject of the lawyer's remark above referred to.

The paper, though in the form of an assignment and release, in reality attests an act of simple bounty towards this trustee and his relatives. There was nothing in the relations between these donees and this old man which would naturally suggest such a disposition on his part. He gave none of the instructions which led to the preparations of these carefully drawn recitals. Indeed, these recitals strike us rather as an apology, than as the true reason or consideration for the operative clauses which follow.

A case so striking could scarcely have failed to impress its details, or, at least, leading incidents upon the memory of the person who prepared this paper; and yet, the significant fact appears that the draughtsman was able to recall but little of anything important, save the single remark above alluded to.

We cannot detect, with exactness, the influences which led this old man to do this thing; nor is it necessary that we should do so. The rule to which we allude rests, in a great measure, upon the improbability that one thus situated should ever be able to prove to a court, or even explain to himself just what did induce the act in question. The court looks upon the relations and their results. (Story's Eq. J., § 319; *Fulton* v. *Whitney* (66 N. Y., 548.)

We fully agree with the trial judge that this old man executed this paper under a mistaken notion of his rights. But it is said that there is no evidence of mutual mistake. The answer is, that mistake on the one hand, and fraud on the other, is quite sufficient to justify the conclusion reached in this case.

It is unnecessary to consume time in an effort to show the application of this observation; and we, therefore, without farther discussion, affirm the judgment, with costs.

DYKMAN, J., concurred; BARNARD, P. J., not sitting.

Judgment affirmed, with costs.